UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



BEULAH A. WADE,

    Plaintiff,

v.                                                  Civil Action No. 2:07cv347

HAMPTON ROADS SHIPPING ASSOCIATION-
INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION PENSION PLAN,

    Defendant.

## ORDER AND OPINION

This matter is before the court on a motion for summary judgment filed by the defendant, Hampton Roads Shipping Association-International Longshoremen's Association Pension Plan (the Plan). After examination of the briefs and record, the court determines that the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. For the reasons set forth herein, the court **GRANTS** the defendant's motion.

### I. Factual and Procedural History

There are two issues raised in the defendant's motion for summary judgment. First, the Plan argues that Beulah Wade has failed to state a claim upon which relief can be granted because she is not entitled to receive benefits under the Plan. Second, the Plan argues that Beulah Wade lacks standing under the Employment Retirement Income Security Act to bring a suit to recover benefits under the Plan.

Clyde and Beulah Wade were married in November 1991 and Clyde Wade was a participant in the Plan. The Plan offers participants two options: the normal benefit or the lump

sum benefit.

Under the normal benefit, the married participant receives a full qualified joint and survivor annuity pension. The participant starts receiving a monthly annuity on the first day of the month following the date the participant filed his retirement application. The participant's spouse receives nothing while the participant is alive. After the participant's death, the surviving spouse receives the survivor's annuity, which is a monthly benefit equal to half the monthly annuity. Unmarried participants that choose the normal benefit option receive a full lifetime annuity that is paid monthly but there is no survivor's benefit.

Under the lump sum benefit, the married participant can choose, with spousal consent, to receive a lump sum payment of twenty-five percent of his accrued lifetime benefit and the remaining seventy-five percent as a monthly annuity. The spouse receives nothing during the participant's life and upon the participant's death, the spouse receives a monthly lifetime annuity equal to half the participant's monthly benefit. Unmarried participants that choose the lump sum benefit receive the same lump sum and monthly annuities as a married participant but there is no survivor's benefit.

The survivor annuity that is available to the spouse upon the participant's death terminates upon the spouse's divorce from the participant unless the spouse obtains a qualified domestic relations order (QDRO). Section 3.8 of the plan states:

> in the event of the dissolution of the Pensioner's marriage by divorce, the spouse shall no longer be eligible to receive a survivor's annuity, provided, however, that the spouse shall be entitled to those benefits awarded her as expressed in a qualified domestic relations order described in Section 401(a)(13)(D) and 414(p) of the [Internal Revenue] Code [I.R.C., 26 U.S.C.].

On July 29, 2005, Mr. Wade applied for disability retirement and submitted an electronic form

2

selecting the lump sum benefit. The signature of Beulah Wade, Mr. Wade's wife, was not on the electronic form but Mr. Wade did indicate on the form that he was married.

On September 2, 2005, the Circuit Court for the City of Norfolk granted Beulah and Clyde Wade a divorce. The divorce decree only provided that Ms. Wade "is awarded fifty percent (50%) of the marital share of [Mr. Wade]'s retirement" to be calculated using the following formula:

$$\frac{147 \text{ months of marriage}}{\text{Total years service}} \times .5 = \text{Wife's share}$$

It is undisputed that the circuit court never entered a QDRO. Mr. Wade appointed his daughter, Suprenia Wade-Powell, as the sole beneficiary under the Plan on September 2, 2005.

On September 29, 2005, the Plan's Board of Trustees approved Mr. Wade's disability retirement application and his retirement start date related back to August 1, 2005, the first day of the month following the filing date of Mr. Wade's retirement application. Mr. Wade died on October 1, 2005. On January 1, 2006, the Plan notified Ms. Wade that the Final Decree of Divorce did not satisfy the statutory requirements to be considered a QDRO.

Ms. Wade filed suit alleging that (i) the Plan violated federal law regarding the "consent requirements for the retirement of a spouse" and (ii) the Plan conspired with her ex-husband to deprive her of retirement benefits. The Plan moves for summary judgment arguing (i) that Ms. Wade cannot state a claim upon which relief can be granted and (ii) Ms. Wade lacks standing under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq.

## II. Standard of Review

A motion for summary judgment is not normally the appropriate procedure for raising the

3

defense of lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because summary judgment is a disposition on the merits of the case. See Solomon v. Solomon, 516 F.2d 1018, 1027 (3rd Cir. 1975); Rivera-Sanchez v. Mars, Inc., 30 F.Supp.2d 187, 190 (D. P.R. 1998); Shoemaker v. Metro Info. Servs., 910 F.Supp. 259, 263 (E.D. Va. 1996) ("12(b)(1) motions cannot typically be converted into motions for summary judgment."); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004). When the jurisdictional issue, however, is so intertwined with the merits of the case and the decision of one would decide the other, it is proper to treat the Rule 12(b)(1) motion as a summary judgment motion and make a determination on the merits. See U.S. v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999); Lovelern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004). A jurisdictional issue is considered intertwined with the merits when a statute provides the basis for both subject matter jurisdiction and the plaintiff's substantive claim for relief. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039-40 (9th Cir. 2004); Montez v. Department of Navy, 392 F.3d 147, 150-151 (5th Cir. 2004). Ms. Wade's claim for relief and the issue of standing both rest upon a determination of whether she possessed a valid QDRO which would entitle her to survivor benefits under the Plan governed by ERISA.

The motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is converted into a motion for summary judgment under Rule 56(c) if matters outside the pleadings are submitted in support of the motion. Fed. R. Civ. P. 16(b); see Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). Summary judgment under

Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., 763 F.2d 604, 610 (4th Cir. 1985); FED. RULE. CIV. PRO. 56(c). The court must assess the evidence and draw all permissible inferences in the nonmovant's favor. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Nevertheless, the non-movant must make a sufficient evidentiary showing such that a jury could reasonably find in its favor. Celotex Corp., 477 U.S. at 322. Thus, while it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Inv. Co., v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987), when such burden has been met, it is up to the non-movant to establish the existence of such an issue. Matsushita, 475 U.S. at 586-87.

### III. Analysis

I.   Whether there is a Claim Upon Which Relief can be Granted

ERISA exclusively governs all claims for benefits under an ERISA-covered employee benefit plan. See 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987). The Plan, in which Mr. Wade was a participant, is an ERISA-covered employee benefit plan. 29 U.S.C. § 1003(a). The language of the employee benefit plan governs the award of benefits. See Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993).

Under the terms of the Plan, a spouse only receives benefits after the participant's death. (Ex. A-1, Plan § 3.3). The Plan provides that the spouse's benefits terminate upon the

dissolution of the marriage unless the spouse obtains a QDRO that complies with the requirements of the Internal Revenue Code, 26 U.S.C. §§ 401(a)(13) and 414 (p). A domestic relations order is considered a QDRO if such order clearly specifies:

> (A) the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (C) the number of payments or period to which such order applies, and (D) each plan to which such order arises.

26 U.S.C. § 414(p)(2). Courts have strictly applied these requirements and have held that a domestic relations order that does not include all of this information cannot be considered a QDRO. See, Board of Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Saxon, 470 F. Supp. 2d 605, 609 & 609 n.5 (E.D. Va.) (holding that a property settlement agreement is not considered a QDRO because it fails to identify the relevant pension funds and does not specifically require the Plumbers and Pipefitters National Pension Fund to pay any benefits), aff'd in part, vacated in part, 2007 U.S. App. LEXIS 24219 (4th Cir. 2007) (affirming the decision of the district court that the pension benefits should not be paid to the former wife and vacating the decision that the former wife had to pay the board's attorneys fees and costs); Deaton v. Cross, 184 F. Supp. 2d 441 (D. Md. 2002) (stating that a domestic relations order is not a QDRO because the statutory requirements were not satisfied); see also Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1097-98 (9th Cir. 2006) (finding that a marital dissolution order failed to qualify as a QDRO because of the lack of detail and specificity regarding the pension); Central States, Southeast & Southwest Areas Pension Fund v. Howell, 227 F.3d 672, 677-78 (6th Cir. 2000) (finding that the injunction entered by the domestic relations court did not comply with the statutory requirements to be considered a QDRO because it lacked an address, the

amount of the participant's benefits to be paid by the plan, the number of payments or durational period of the order, or the name of the plan).

Ms. Wade's Final Decree of Divorce only provides that she is awarded fifty percent of the marital share of Mr. Wade's retirement. This decree cannot be considered a QDRO because the decree fails to specify the particular retirement plan it is referencing and fails to specify the number of payments or applicable period of time to which it applies as required by statute. Ms. Wade argues that a QDRO was prepared by her former attorney but was never signed or filed with the court. Without an order from the court satisfying the specific statutory requirements to be a QDRO, Ms. Wade does not have a right to receive any benefits under the Plan.

Ms. Wade argues that the Plan should not have accepted Mr. Wade's lump sum election because he failed to obtain spousal consent as required by the Plan. Mr. Wade applied for the lump sum retirement benefits while he was still married to Ms. Wade and therefore, should have included her signature on the application. This omission, however, is irrelevant because Ms. Wade did not have any rights under the Plan until Mr. Wade's death on October 1, 2005 and was not entitled to any payments under the Plan while they were married.[1] Their divorce was final on September 2, 2005 and since Ms. Wade failed to obtain a QDRO, she does not have any right to any benefits under the Plan after their divorce. The failure to include Ms. Wade's signature would only be relevant if Ms. Wade was still married to Mr. Wade at the time of his death because then she would be entitled to receive benefits under the Plan.

II      Whether Ms. Wade has standing under ERISA

Under ERISA, only plan participants, beneficiaries or fiduciaries may bring a civil action

---

[1] Additionally, the Board of Trustees for the Plan did not approve Mr. Wade's retirement until September 29, 2005, after Mr. Wade was divorced from Ms. Wade.

7

seeking payment of benefits against a plan or its administrator. 29 U.S.C. § 1132(a). The determination of whether a plaintiff falls within one of the three categories is a jurisdictional prerequisite that determines whether the plaintiff has standing to sue under ERISA. See HealthSouth Rehabilitation Hosp. v. American Nat. Red Cross, 101 F.3d 1005, 1008 (4th Cir. 1996) ("[A] person who is neither a participant nor a beneficiary lacks standing to bring an ERISA action against a fiduciary or plan administrator."); see also Cobb v. Central States, Southwest & Southeast Areas Pension Fund, 461 F.3d 632, 634-35 (5th Cir. 2006) ("[T]he issue of whether a particular plaintiff falls within one of the three enumerated classes of litigants (participants, beneficiaries, or fiduciaries) is a jurisdictional one."); Ward v. Alternative Health Delivery Sys., Inc., 261 F.3d 624, 627 (6th Cir. 2001) (finding that a court lacks subject matter jurisdiction if the plaintiff lacks standing under ERISA). A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). A participant is defined as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A fiduciary is defined as a person that exercises discretionary authority or control with respect to the management of the retirement plan or its assets, renders investment advice for a fee or compensation, or has any discretionary authority or responsibility in the administration of the retirement plan. 29 U.S.C. § 1002(21)(A).

Ms. Wade is not a fiduciary under ERISA and, therefore, the only way for Ms. Wade to bring suit under ERISA is as either a participant or a beneficiary. Ms. Wade cannot be

considered a participant in the Plan because she was never an employee covered by the Plan. Ms. Wade also cannot be a beneficiary under the Plan because she was not designated by the participant. Mr. Wade designated his daughter, Supernia Wade-Powell, as his sole beneficiary under the Plan on September 2, 2005. Therefore, the only way Ms. Wade could have standing to sue under ERISA is if she obtained a QDRO. See Clark v. Superior Court of District of Columbia, 702 F. Supp. 4 (D.D.C. 1988) ("The holder of the qualified domestic relations order becomes a participant or beneficiary due under the plan."), aff'd, 905 F.2d 389 (D.C. Cir. 1990); Brotman v. Molitch, 1989 U.S. Dist. LEXIS 9157 (E.D. Pa. 1989) ("[W]ere the court to conclude that the order did not satisfy ERISA's requirements [to be a QDRO], plaintiff would no longer be a beneficiary [and] the jurisdictional basis for the court's jurisdiction would no longer exist."). Since Ms. Wade failed to obtain a QDRO, she lacks standing to bring a suit seeking benefits from the Plan under ERISA.

## V. Conclusion

For the reasons discussed more fully above, Hampton Roads Shipping Association-International Longshoremen's Association Pension Plan's motion for summary judgment is **GRANTED**.

The plaintiff is **ADVISED** that she may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is **REQUESTED** to mail copies of this Order to the plaintiff and the counsel for the defendant.

**IT IS SO ORDERED.**

/S/ *[signature]*

Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 7, 2007